# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALLEN MICHAEL McFADDEN, #562-393, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-18-469 |
| OFFICER SHAWN LOWICKI, SGT. J.B., | * | |
| LT. STEPHEN ELLIOTT, OFFICER MELISSA PARKER, | * | |
| NICOLE FREY, R.N., | * | |
| Defendants[1] | * | |
| | *** | |

## MEMORANDUM OPINION

Allen Michael McFadden, the self-represented plaintiff, is a Maryland Division of Correction ("DOC") prisoner. Pursuant to 42 U.S.C. § 1983, he initially filed a civil rights action against Officer S. Lowicki, a DOC employee at Eastern Correctional Institution ("ECI"), seeking $100,000 in damages.[2] In his unverified complaint, McFadden claimed that Lowicki took his mattress on the evening of August 16, 2017, and did not return it for five days. As a result, McFadden slept "on the cold, steel bunk." ECF 1 at 2.

On April 30, 2018, prior to Lowicki's response, McFadden amended his complaint to include additional claims and defendants. ECF 10 ("Amended Complaint"). Specifically, McFadden claimed that on August 18, 2017, Registered Nurse Nicole Frey ignored McFadden's

---

[1] The Clerk shall amend the docket to reflect the full names of Defendants Lowicki and Lt. Elliott and the addition of Lt. Elliott, Officer Melissa Parker, and Registered Nurse Nichole Frey as defendants.

[2] McFadden currently is confined at Roxbury Correctional Institution. The incidents relevant to this lawsuit occurred while he was housed at ECI.

statement that he was suicidal, instead stating she "don't give a fuck." *Id.* at 1. He named "Sgt. J.B.,"[3] an officer on the 8 a.m. to 4 p.m. shift, for failing to feed him lunch on August 18, 2017, and Officer Parker and Lt. Elliott[4] for failing to feed him, respectively, on one occasion following his transfer to the suicide unit and on one occasion on November 17, 2017, due to a belief that McFadden had assaulted a fellow officer. *Id.* at 2. McFadden states in his Amended Complaint that these additional allegations are "true and correct" under "penalty of perjury." *Id.* at 3.

Frey, the sole Medical Defendant, has moved to dismiss the suit or, alternatively, for summary judgment. ECF 21. The motion is supported by a memorandum of law (ECF 21-3) (collectively, "Frey Motion") and exhibits. Frey argues that she did was not deliberately indifferent to McFadden's medical needs, did not commit malpractice, never knew McFadden had threatened suicide, and did not curse at him. ECF 21-3 at 4-10. McFadden filed an opposition to the Frey Motion (ECF 23), and Frey replied. ECF 24.

Correctional Defendants Lowicki, Elliott, and Parker also seek dismissal or summary judgment. ECF 25. Their motion is supported by a memorandum (ECF 25-1) (collectively, Correctional Defendants' Motion) and exhibits. They contend that the missing mattress initially was not returned because its absence was not reported; that McFadden's threats of suicide resulted in his prompt placement in the Administrative Segregation Observation Area ("ASOA"), where mattresses were not permitted; and that neither Parker nor Elliott was assigned to deliver meals to prisoners during the times alleged in the Amended Complaint. ECF 25-1 at 2-6. The

---

[3] "Sgt. J.B." was not further identified and was not served with summons. Therefore, I shall dismiss the case as to him, without prejudice. However, for reasons noted herein, had service of process occurred, Sgt. J.B. would be entitled to summary judgment.

[4] "BJ," Parker, and Elliott, together with Lowicki, are hereinafter referenced by name or collectively as "Correctional Defendants."

Correctional Defendants also argue that McFadden failed to exhaust administrative remedies concerning these allegations prior to initiating his lawsuit. *Id.* at 6. McFadden has filed an opposition.[5] ECF 27.

After review of the papers filed, the Court finds a hearing on the pending matters is unnecessary. *See* Local Rule 105.6 (D. Md. 2016). As set forth herein, defendants' dispositive motions, construed as motions for summary judgment, shall be GRANTED.

## I. Background

### A. Medical Claim

McFadden is 27 years old with a medical history of dental problems and depression. ECF 21-5, Frey Affidavit, ¶ 2. McFadden claims that on August 18, 2017, he threatened suicide. Frey came to his cell and allegedly stated "'why are you telling me I don't give a fuck.'" ECF 10 at 1.

Frey presents a vastly different version of events.[6] She claims that on August 18, 2017, she was summoned to McFadden's cell for a medical clearance assessment to determine whether he should be transferred to the Administrative Segregation Observation Area ("ASOA"), a special suicide watch area, after he threatened self-harm during a conversation with a psychiatric

---

[5] McFadden claims he exhausted his administrative remedies, referencing "Exhibit 2." ECF 27 at 2. No exhibit is attached. To the extent McFadden is referencing the Correctional Defendants' Exhibit 2 (ECF 25-3 at 2, 10-12), it appears that McFadden failed to provide additional requested information in support of his appeal to the Commissioner, and thereafter did not seek further review by the Inmate Grievance Office, thus failing to properly exhaust all available administrative remedies, as required by the Prisoner Litigation Reform Act, 42 U.S.C. §1997e(a). *See generally* Md. Code (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Code of Maryland Administrative Regulations ("COMAR") 12.02.28.01, 12.02.28.14(B)(5), 12.02.28.18. The Court does not rely on the failure to exhaust in its disposition of the case, for reasons apparent herein.

[6] All attached records have been certified as true and accurate copies. *See* ECF 22-4; *see also* ECF 25-2.

nurse. ECF 21-5 (Frey Affidavit), ¶ 4. When Frey asked plaintiff if he was injured, McFadden refused to answer and did not express an intent to injure himself. *Id.,* ¶ 6. Frey found no physical injury upon visual examination and cleared McFadden for transfer to the ASOA. *Id.,* ¶ 8. The parties do not indicate whether they had further contact following this incident.

### B. Conditions of Confinement Claim

McFadden complains that his Eighth Amendment right to proper conditions of confinement was violated when he was denied a mattress in his cell for five days, commencing on August 16, 2017, and was denied a meal on several occasions. The Correctional Defendants provide declarations and record evidence explaining the denial of the mattress and, while denying involvement with regard to meal service, provide information that may explain why McFadden occasionally missed a meal.

## II. Standard of Review

Defendants' motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF 12. Motions styled in this manner implicate the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P.

4

12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed. App'x 220 (4th Cir. 2016) (per curiam). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[7] McFadden has received such notice here (ECF 22; ECF 26) and has responded.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Generally, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). A

---

[7] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

party "needs an 'adequate opportunity' to present its case and 'demonstrate a genuine issue of material fact.'" *Adams Housing, LLC*, 672 Fed. App'x at 222 (citation omitted). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f))

Notably, "to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure

6

to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted); *see Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x, 552, 561 (4th Cir. 2015). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id*. (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

McFadden has not requested discovery. Nor is it apparent that additional discovery is needed. In light of the foregoing, I am satisfied that it is appropriate to address the motions, which rely on matters outside the pleadings, as motions for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very

7

terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015);

*Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Judd*, 718 F.3d at 313. On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585–86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the

moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

## III. Discussion

### A. Medical Defendant

McFadden complains that Nurse Fey disregarded his suicidal threat. The claim falls under the Eighth Amendment, which prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016).

Under the Eighth Amendment, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294 at 303 (1991); *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Farmer*, 511 U.S. at 837. The deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38).

Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified

access to health care). A "'serious ... medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires a determination as to whether the defendant acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40. In order "[t]o show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178. In other words, deliberate indifference requires a showing that the defendant disregarded a substantial risk of harm to the prisoner. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001).

"The requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" *King*, 825 F.3d at 219 (citation omitted). Although this "'entails more than mere negligence ... it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer*, 511 U.S. at 835).

The subjective component requires "subjective recklessness" in the face of a serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). As the *Farmer* Court explained, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Thus, "[a]ctual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.; Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it ... [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences ... To lower this threshold would thrust federal courts into the daily practices of local police departments."). Mere negligence or malpractice does not rise to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle v. Gamble, supra*, 429 U.S. at 106). Moreover, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). If a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Brice*, 58 F.3d at 105.

Even if the requisite subjective knowledge is established, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Frey's uncontroverted Affidavit establishes that Frey was contacted on one occasion to assess McFadden's condition and, if appropriate, to approve him for transfer to a suicide observation area. Rather than disregard McFadden's condition, Frey determined that McFadden did not appear to have caused self-harm. But, she approved his transfer for observation and further mental health care. No Eighth Amendment violation is apparent.

McFadden's claim that Frey used vulgar language and indicated she did not care that he was suffering a mental health crisis fails to state a claim of constitutional magnitude. *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979); *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C. 1990); *Cole v. Cole*, 633 F.2d 1083, 1091 (4th Cir. 1980); *see also Carter v. Morris*, 164 F.3d 215, 219, n 3 (4th Cir. 1999) (rejecting use of racial epithets as a basis for constitutional claim). The language allegedly used in this case is not condoned by this Court, but it falls short of acts proscribed by the Fourth, the Fourteenth, or the Eighth Amendments. *See Pink v. Lester*, 52 F.3d 73, 75 (1995) ("[N]ot all undesirable behavior by state actors is unconstitutional."). Based on the foregoing, Defendant Frey is entitled to summary judgment.

Finally, to the extent that McFadden's complaint raises a medical negligence claim arising under state law, the Court declines to exercise supplemental jurisdiction. *See Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

## B. Correctional Defendants

McFadden's claims against the Correctional Defendants fare no better. The Eighth Amendment protects prisoners by requiring that prison officials "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer,* 511 U.S. at 832. To establish a violation of the Eighth Amendment, a prisoner must establish both an objective component (a serious deprivation) and a subjective component (the action against the prisoner was undertaken by a prison official with a sufficiently culpable state of mind). *Wilson,* 501 U.S. at 298.

### 1. Lack of Mattress

On August 16, 2017, Defendant Lowicki was on duty during the 4 pm to midnight shift, assigned to Housing Unit 4 (HU4), a segregated housing unit with 48 double cells and up to 96 prisoners who have been placed in administrative or disciplinary segregation. ECF 25-2 (Lowicki Decl.), ¶ 3. On that day, officers conducted routine cell searches in the unit. *Id.* During searches, prisoners are handcuffed and taken to a holding area, prior to cell inspection, which includes taking mattresses from the cell bunks and passing them through a metal detector outside the cell. *Id.* ¶ 4. After McFadden's cell was searched, an unrelated altercation broke out, during which time McFadden's mattress was inadvertently removed by sanitation workers and placed in the property room. *Id.*

Lowicki avers that McFadden never told him of the missing mattress. Moreover, he claims that if McFadden had done so, Lowicki would have arranged for the mattress to be returned. *Id.* ¶ 5.

On August 18, 2017, McFadden was moved to the ASOA, a different housing unit from the segregation unit to which Lowicki had been assigned. There, prisoners under observation for

psychological reasons are not provided mattresses due to the possibility of self-harm. ECF 25-2, Lowicki Decl., ¶ 6.

In examining this claim, the Court notes that McFadden does not dispute that his deteriorating mental health merited his placement on ASOA alert status, and defendants do not dispute that while on the highest level of staff alert status, McFadden was without a mattress. Although defendants aver that they were not responsible for McFadden's restricted housing status, as his placement was determined by a healthcare provider, the court nonetheless will examine McFadden's conditions of confinement claim.

Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that "the deprivation of [a] basic human need was *objectively* sufficiently serious," and that "*subjectively* the officials act[ed] with a sufficiently culpable state of mind."

*Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson*, 501 U.S. at 298-300).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to a prisoner's health or safety was disregarded. *Wilson*, 501 U.S. at 298-99. In other words, "'the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.'" *Brown v. N.C.*

15

*Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

A defendant's conduct is not actionable unless, "in light of preexisting law the unlawfulness of those actions is apparent." *Iko*, 535 F.3d 237-38 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). "We do not require of such officials the legal knowledge culled 'by the collective hindsight of skilled lawyers and learned judges,' but instead only 'the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct.'" *Johnson v. Caudill*, 475 F.3d 645, 650 (4th Cir. 2007) (quoting *Jackson v. Long*, 102 F.3d 722, 731 (4th Cir. 1996)).

Deprivation of a bed in a correctional facility does not necessarily transgress such a line. *See Lowery v. Bennett*, 492 F. App'x 405, 407, 410 (4th Cir. Aug. 9, 2012) (unpublished) (10-day placement on strip-cell confinement, which included removal of prisoner's personal hygiene items, religious books, mattress, bedding, towels, and clothing, did not violate Eighth Amendment); *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir.1995) (four days without clothes, mattress, water, bedding, legal mail or hygienic supplies did not violate the Eighth Amendment); *Strickler v. Waters,* 989 F.2d 1375, 1378-79 (4th Cir. 1993) (no Eighth Amendment violation where prisoners slept on mattresses on floor of day room); *Crowe v. Leeke*, 540 F.2d 740,741-42 (4th Cir. 1976) (newly arrived prisoners sleeping on floor while facility under construction does not state claim).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler,* 989 F.2d at 1381. Demonstration of an extreme deprivation

16

proscribed by the Eighth Amendment requires proof of "a serious or significant physical or emotional injury resulting from the challenged conditions." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003); *see Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003).

No bright line was crossed when McFadden's mattress was inadvertently taken to the property room, or when McFadden was housed on ASOA alert status. The conditions described by McFadden were not so severe that corrections personnel could be charged with "fair warning that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). The discomforts experienced by McFadden were restrictive and harsh, but were of limited duration. It appears that McFadden returned to a "regular" cell on the administrative and disciplinary segregation unit on August 21, 2017. ECF 25-3 at 2. The temporary restrictions did not impose cruel and unusual punishment on McFadden, a conclusion supported by the absence of proof of significant, serious physical or psychological injury resulting from McFadden' brief stay on level one staff alert status.

    **2.**     **Missed Meals**

Missing a meal on a few isolated occasions does not constitute an Eighth Amendment violation where the meals the prisoner is provided are sufficient to maintain normal health. *See, e.g., Cunningham v. Jones,* 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (prisoner fed one meal a day for fifteen consecutive days did not establish an Eighth Amendment violation where meal provided sufficient nutrition to sustain normal health); *Waring v. Meachum,* 175 F.Supp.2d 230, 240–41 (D. Conn. 2001) (no Eighth Amendment claim where one prisoner observing Ramadan received meals late, causing him to go almost 24 hours without food, and on two

occasions did not receive his bagged meal, and another inmate's Ramadan meal was confiscated on one occasion, causing him to go 32 hours without food).

McFadden missed an occasional meal. But, this is not a sufficiently serious deprivation so as to rise to the level of an Eighth Amendment violation.

## IV. Conclusion

Defendants are entitled to summary judgment in this case. A separate Order shall be entered in accordance with this Memorandum Opinion.


Date: October 22, 2018 _____/s/_____
Ellen L. Hollander
United States District Judge